**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Allen M. WAINER, Defendant-**
**Appellant.**
**No. 11777.**

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1957.

Rehearing Denied Feb. 28, 1957.

Maurice J. Walsh, Chicago, Ill., for appellant.

Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Atty. U. S. Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Lee A. Jackson, Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

This cause was previously before us on appeal by defendant from an order denying his motion to amend his answer. 7 Cir., 211 F.2d 669. In the original proceeding the United States sought, pursuant to 26 U.S.C.A. § 2800(d), to recover taxes plus penalties and interest assessed on distilled spirits and alcohol seized at an illicit unbonded distillery near Joliet, Illinois in 1935, in which the defendant and others allegedly had a proprietary interest. The trial court awarded a judgment of $47,357.63 against defendant, less a *pro tanto* credit of $5000.

During the course of the original trial, it developed that Harry Braverman, with whom defendant was jointly and severally assessed, had submitted an offer in compromise which had been accepted by the Commissioner of Internal Revenue without notice to defendant, in accordance with his authority under 26 U.S.C.A. § 3761(a), which provides *inter alia* that: "The Commissioner, with the approval of the Secretary, * * * may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense * * *." At the close of the case, defendant moved to amend his answer to conform to the evidence and to allege that the acceptance of the offer in compromise effectively released him from liability. The District Court noted that "defendant's motion to amend his answer to conform to the evidence * * * presents for judicial determination the question as to whether a release, through compromise, of one assessee from the joint and several assessments * * * releases the other assessee." It concluded that the acceptance of the offer in compromise extinguished merely the individual liability of Braverman and did not constitute a release of defendant. On appeal the taxpayer urged that the lower court was in error in its determination that the effect of a release of one of two or more joint and several obligors failed, as a. matter of law, to extinguish the liability of the others. There is no doubt but that this issue was squarely presented to this court on the prior appeal in this manner even though documentary evidence constituting the release itself, was not before us at that time. As we stated in our opinion, 211 F.2d at page 671: "The principal questions presented here are whether the taxpayer had such a connection with the distillery as to be liable for the taxes assessed, *and whether the release of Braverman by the acceptance of his offer in compromise effected also the taxpayer's release.*" (Emphasis supplied). Therefore, as no special circumstances exist herein for a redetermination of the aforementioned issue, our conclusion on the former appeal constitutes the law of this case. Commercial Nat. Bank in Shreveport v. Connolly, 5 Cir., 176 F.2d 1004, 1006; Consumers Petroleum Co. v. Consumers Co., 7 Cir., 176 F.2d 441, 442; United States v.

Huff, 5 Cir., 175 F.2d 678, 679; May Department Stores Co. v. Reynolds, 8 Cir., 140 F.2d 799, 800.

On the first appeal we concluded that, in the absence of a saving clause, the release of one of two or more joint and several obligors would release them all. However, as previously stated, at that time, the release in question was not a part of the record and we had no basis for determining its nature and scope. Consequently, the judgment was reversed with instructions to grant defendant leave to file his amended answer, for the purpose of determining whether or not the release did in fact contain a saving clause. From the evidence introduced on retrial after remand, the trial court found from the terms of the compromise agreement that the government had effectively reserved its rights against this defendant.

On this, the second appeal, the defendant in asserting that there was no restrictive language in the compromise agreement, presents assignments of error upon which we shall comment as we discuss the nature of the evidence presented.

On February 3, 1941, Harry Braverman submitted an offer in compromise of $5000 on Form 656–C together with a Statement of Financial Condition and Other Information. Both documents were certified by Harry K. Jacols on that date. The offer was designated by serial number 443. At the time of this submission, there were no other offers of Braverman outstanding. On the same day, Mr. Braverman executed a statement containing the following pertinent language: "My Liability to pay the balance of said tax, penalties and interest, remaining after deducting from the assessment the amount hereby tendered, collection of which balance shall not be enforced against me by suit or any other proceeding; *it being understood that this undertaking shall not release any other person from liability under said assessment.*" (Emphasis supplied.) This document was acknowledged by Percy L. Graham, was not attached to the offer in compromise and does not refer specifically to the offer in question, but was executed and acknowledged on the same date as the offer in compromise.

It is defendant's position that as this statement was not acknowledged by the same party, and as, inferentially, it was not signed at the same time and place, these facts in themselves precluded the District Court from concluding that the restrictive instrument was executed in conjunction with and intended to be a component part of the offer in compromise. Such a contention, we think, is simply without foundation, inasmuch as on its face the document was executed and authenticated on the same day as the offer in compromise, and could have referred only to the offer in question as there were no other offers of Braverman outstanding at that time. In the absence of other evidence, the fact that a different party acknowledged the signatures is of no material significance. It is clear from the evidence in the record that the restrictive clause was intended to constitute an integral part of the offer in compromise.

An interoffice memorandum issued by the Commissioner to the various Collectors of Internal Revenue, dated March 25, 1938 (Com-Mimeograph Coll. No. 4749, A.T. No. 158) indicated that the prior policy had been to treat the acceptance of an offer in compromise from one of two or more taxpayers jointly and severally liable to a single assessment, as determinative of the entire assessment and a release of all taxpayers involved. By this memorandum, however, the Commissioner initiated the following change of policy: "if an offer, submitted by one of two or more taxpayers named in a single assessment, is accompanied by a stipulation that it is to cover the liability of the proponent alone, such offer may be accepted in compromise of such proponent's individual liability without releasing the remaining

taxpayers from liability to the assessment, less the amount of the offer." Also included was a declaration of the procedure to be followed "Where an Offer is Submitted in Compromise of a Taxpayer's Individual Liability to a Joint Assessment", whereby it was declared that a stipulation should be obtained from the proponent evidencing that the offer was limited to his individual liability and containing the exact language to be used, which was identical with that used by Mr. Braverman in the separate document executed by him previously alluded to. Similarly, the language to be used in the letter of acceptance to a taxpayer was spelled out. The only deviations from the instructions in the case before us were that the restrictive statement was not inserted in Form 656–C as required, and that the language used in the letter of acceptance to taxpayer Braverman did not conform. Nevertheless, the procedure established by the Commissioner's statement of policy was substantially complied with. Even if there were a material deviation, that, in itself, would not be determinative of the matter at issue, as the policy outlined by the Commissioner in the mimeograph was merely directory and not mandatory in character.

■ If defendant's contention were correct, it would hamper not only the government in effecting a compromise, but also the taxpayer under certain circumstances. To approve defendant's suggestion would be to sacrifice the principle of compromise to mere form of procedure and render settlements with the government delusive and uncertain. As was aptly expressed in Willingham v. United States, 5 Cir., 208 F. 137, 139: "If the defendant in good faith made the payment of the tax and penalty for the purpose of compromising the impending criminal action, he is entitled to the full effect and benefit of it regardless of whether or not he followed any technical rules of procedure laid down by the Internal Revenue Department."

In evidence were other documents constituting, in main, interdepartmental correspondence relating to the compromise of Braverman's liability which defendant insists do not reflect an intention on the part of the government to rely on the saving provision in Braverman's offer in compromise. However, in the abstract and statement which recorded the action taken by the Commissioner it is quite clear that the statement executed by Braverman was considered as part of the offer in compromise. The particular serial number 443 was referred to, which we have previously determined included the restrictive clause. However, there is also the following statement: "this compromise is for proponent's individual liability, such proposition being in the form of the stipulation prescribed by Com.Mim., Coll. No. 4749, A.T. No. 158, dated Mar. 25, 1938.", which clearly indicates an intent to rely on the so-called stipulation.

One of the essential ingredients relied on by the defendant to indicate that the government release did not contain a saving clause is a letter of December 22, 1941 to Braverman from the government formally accepting his offer in compromise. This letter does not *in haec verba* state that it is only the individual liability of Mr. Braverman that is being released. However, in the caption of this piece of correspondence serial number 443 is referred to as is the amount of the offer.

We need not further discuss the nature of the evidence introduced below, for when viewed in its entirety, the conclusion is inescapable that the saving clause constituted a component part of the compromise agreement whereby the government effectively preserved its rights against the taxpayer in question.

■ Finally, it is urged that the effect of 26 U.S.C.A. § 3761, the source of the Commissioner's power of compromise, is to lodge in the Commissioner an

unfettered discretion, in effect, to shift partially the tax burden from one party to another without notice to the other taxpayer upon acceptance of an offer in compromise. However, taxpayer evidently fails to recognize the significance of a joint and several assessment whereby the government could single out any one of the assessed taxpayers and proceed against him for the entire amount of the assessment without any basis for complaint on his part.

For the reasons stated, the judgment is affirmed.